FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

2008 OCT -7 P 2:33

| | |
|---|---|
| FIRST ASSEMBLY OF GOD OF ALEXANDRIA, INC.<br>700 West Braddock Road,<br>Alexandria, VA 22302<br><br>Plaintiff,<br><br>v.<br><br>CATHEDRAL DESIGN & CONSTRUCTION, INC.<br>9360 Yale Lane<br>Highlands Ranch, CO 80126<br><br>Service to:<br>R/A Howard Kelley<br>9212 Arabian Ave.<br>Vienna, VA 22182<br><br>Defendant. | Civil Action No. 1:08CV1053<br><br>CMH/IDD |

## COMPLAINT

**COMES NOW**, Plaintiff, First Assembly of God of Alexandria, VA ("Church"), by and through Counsel alleging Breach of Contract against Defendant, Cathedral Design & Construction, Inc. ("CDC"), and states as follows:

### JURISDICTION AND VENUE

1. Subject-matter jurisdiction is proper under this Court's Diversity Jurisdiction pursuant to 28 U.S.C.A. § 1332. Plaintiff is a Virginia resident and Defendant is a corporation in the State of Colorado with offices in Maryland and the amount in controversy exceeds $75,000.000

2. Personal jurisdiction is proper pursuant to the 5th and 14th Amendments of the United States Constitution and Rule 4(h) of the Federal Rules of Civil Procedure.

3. Venue is proper pursuant to 28 USC § 1391(a).

## PARTIES

4. The Church is an incorporated Virginia church in good standing with the Commonwealth with its principal office at 700 W. Braddock R., Alexandria, VA 22302.

5. CDC is a Colorado corporation registered with the Virginia State Corporation as a foreign corporation in good standing with its principal office listed as 5125 Berwyn Rd., College Park, MD 20740 and with its Virginia Registered Agent at 9212 Arabian Ave., Vienna, VA 22182.

## FACTS

6. The Church began the process of actively looking for a new church location in the summer of 2007, realizing it was outgrowing the size of its current property. The Church was unable to find any single property that was large enough to provide for its needs. It did, however, through a broker, find several adjoining properties which it could assemble into one parcel ("assemblage") that would suffice.

7. The assemblage properties were as follows: Lots 1 and 2 were located at 6977 Telegraph Road, Alexandria, VA 22310, Parcel ID # 0921.01.0012 and 0921.01.0013, respectively; Lots 3 and 10 were located at 7001 Telegraph Road, Alexandria, VA 22310, Parcel ID # 0921.01.0011 and 0921.01.0007, respectively; Lot 4 was located at 7019 Sheridonna Lane, Alexandria, VA 22310, Parcel ID # 0921.01.0010; Lot 5, 6 and 7 were located at 7101 Sheridonna Lane, Alexandria, VA 22310, Parcel ID # 0921.01.0001, 0921.01.0002, 0921.01.0005, respectively; Lot 8 was located at 7018 Sheridonna Lane, Alexandria, VA

22310, Parcel ID # 0921.01.0009; Lot 9 was located at 7007 Telegraph Road, Alexandria, VA 22310, Parcel ID # 0921.01.0006; Lot 11 was located at 6981 Telegraph Road, Alexandria, VA 22310, Parcel ID # 0921.01.0008. See Attached Map, *Exhibit A*.

8. Though the Church hoped to purchase all of the lots, the primary lots necessary for any deal were Lots 1, 2, 3, 8, 9, 10, and 11.

9. The Church hired CDC, a design-build company, to ensure it could legally use the land for its desired purposes and would be able to construct suitable buildings on the properties of the assemblage.

10. The parties entered into their first contract together on September 27, 2007, a document titled "Preliminary Design-Build Agreement Between Owner and Design-Builder" ("Agreement #1"). *Exhibit B*. The Contract required that "CDC [] do a Site Feasibility Study for 6977 Telegraph Rd", the address which was comprised of Lots 1 and 2.

11. Attachment A of Agreement #1 stated explicitly, under the title of "Preliminary Land and Zoning Feasibility", that CDC would "prepare [] a report [] detailing the current zoning and allowable uses of this property....**This phase includes analyzing the proposed use for compliance with the...Fairfax and Alexandria Zoning Ordinance**, and seeking input from the Fairfax and Alexandria Zoning Officer." (emphasis added).

12. The parties then entered into their second contract on November 20, 2007, a document titled "Preliminary Design-Build Agreement Between Owner and Design-Builder" ("Agreement #2"). *Exhibit C*. The Contract stated that "CDC will perform a Phase 1 – Environmental Assessment of the site, [Lots 1 and 2]".

13. CDC hired the engineering company Bolton & Associates, LLC ("Bolton") of La Plata, MD to conduct the Feasibility and environmental studies.

3

14. By letter of November 30, 2007, CDC stated that the Environmental Site Assessment and Site Feasibility Study for Lots 1 and 2 had been completed. The report did not contain any reference to zoning or environmental regulations that would disallow building on the property.

15. Thereafter, CDC stated that Lots 3, 8, 9, 10, and 11 were included in the initial site feasibility study that was done on Lots 1 and 2. The parties also agreed that CDC would do an Environmental Assessment of Lots 8, 9, 10 and 11.

16. In a letter dated December 5, 2007 from Bolton to CDC, Bolton confirmed that they had finished the "Feasibility, Preliminary Land Feasibility analysis" for Lots 1, 2, 3, 8, 9, 10, and 11. *Exhibit D*. Bolton then stated its findings, noting that the "Fairfax County Zoning Ordinance allows the use of a church as a special exception." The report was devoid of any mention of the presence of any limiting zoning or environmental regulations.

17. Relying on the reports produced by CDC, the Church began its efforts to enter into contracts with the owners of lots 1-3 and 8-11. The Church was able to secure contingent contracts with a 90-day refundable down payment for all of the lots, except Lots 1 and 2. Because of matters particular to lots 1 and 2, and to receive a much reduced purchase price, the Church was forced to agree, in a contract dated March 28, 2008, to a $100,000.00 non-refundable deposit on the property.

18. Soon thereafter, on or about April 21, 2008, the Church and CDC met with the appropriate county parties in the Fairfax County Land Use office. It was then first pointed out by the Fairfax County Zoning officer that the Church would not be able to build anything on the property because all of the assemblage land was encumbered by "Resource Protection Areas" ("RPA") under the Chesapeake Bay Preservation Act ("CBPA") and much of it was in a flood plain. See Map, *Exhibit E*.

4

19. Upon this startling discovery and after many inquiries by the Church as to whether these problems could be overcome, which proved unsuccessful, the Church requested that CDC reimburse the Church for amounts it had expended on CDC's services, its cost in pursuing development of the useless site, and any other outlays related to securing the defunct lots. To this date, while CDC admitted culpability it has refused to reimburse the church for its losses due to their negligence and breach of contract and has forced the Church to bring this action.

## Count I – Breach of Contract

20. Paragraphs 4-19 are herein incorporated by reference.

21. The parties entered into Agreement #1 on September 27, 2007 for CDC to do a Site Feasibility Study for Lots 1 and 2. Attachment A of Agreement #1 stated explicitly, under the title of "Preliminary Land and Zoning Feasibility", that CDC would "prepare [] a report [] detailing the current zoning and allowable uses of this property....**This phase includes analyzing the proposed use for compliance with the...Fairfax and Alexandria Zoning Ordinance**, and seeking input from the Fairfax and Alexandria Zoning Officer." (emphasis added).

22. In conducting a zoning analysis, CDC should have discovered almost immediately that Lots 1 and 2 were not buildable due to the CBPA, which is contained in the Fairfax County Zoning Ordinance at § 32-03-118, the maps of which are readily accessible on the Fairfax County Land Use Development Website (www.fairfaxcounty.gov/dpwes/). The standard practice in the industry is to first review the land use maps of the County. If CDC had conducted even a cursory review of the maps, it would have certainly discovered that the Lots were substantially encumbered by RPA's.

5

23. Therefore, within mere minutes of beginning its due diligence research CDC should have been able to advise the Church that building on the desired assemblage was undoable. Once it was decided that Lots 1 and 2, the fundamental lots to the arrangement, were not buildable upon, the Church would not have pursued the other properties. Therefore, all work and costs occurring after CDC's initial error in not immediately discovering the RPA's on Lots 1 and 2 are direct consequential damages of CDC's breach.

24. Moreover, the parties to Agreement #2, entered into on November 20, 2007, for CDC to perform a Phase 1 – Environmental Assessment of Lots 1 and 2 should have also led CDC to discover the existence of the RPA's. CDC agreed in that contract to "[r]eview records that are reasonable [sic] ascertainable, **publicly available** and from standard sources, for the purpose of helping to identify recognized environmental conditions in connection with the property." (emphasis added). CDC also was to "provide to the [Church] a preliminary evaluation of the site...as well as information regarding applicable governmental laws, regulations and requirements."

25. CDC again breached the contract by not reviewing the proper records, laws and/or regulations and discovering the obvious environmental encumbrance on the Assemblage.

26. By failing to discover and report to the Church the obvious zoning and environmental problems with the property, CDC breached both Agreement #1 and Agreement #2.

27. Moreover, the parties verbally agreed and the Church paid for CDC to conduct a Site Feasibility Study and Environmental Assessment of Lots 3, 8-11; the purpose of which was to inform the Church of the allowable uses on the properties and ensure the Church's desired site use would comply with all the County zoning and environmental regulations. See *Exhibit D*.

6

28. CDC represented to the Church that all of the aforementioned lots were buildable upon and that the two initial buildings planned, 65,000 and 10,000 square feet respectively that CDC had drawn for the initial planned uses with the parking lots and other structures, would comply with all zoning and environmental requirements of Fairfax County. CDC did not discover and/or failed to mention that all the lots were substantially covered by RPA's which precluded any such planned uses.

29. Once it was discovered that all of the lots were restricted by RPA's and further explored options were unsuccessful, it became evident even to CDC that the Church could not build the planned structures which CDC had initial architectural plans for of approximately 65,000 square feet for the church and related uses and approximately 10,000 square feet for the day care and other uses on the lots.

30. Due to CDC's numerous breaches of the parties' agreements, the Church was damaged in expending money on deposits, planning, architectural, environmental, legal and engineering costs to begin the approval process for the building and grading and further site work on useless properties. The Church's damages were directly caused by CDC's breach and were foreseeable at the time of execution of their contracts.

## **PRAYER FOR RELIEF**

WHEREFORE, the Church respectfully requests that this Court grant the following relief:

A. Find Defendant CDC liable and assess damages in an amount equal to **$175,000.00**, plus pre and post-judgment interest, and grant any further relief as deemed just and appropriate by this Court.

## DEMAND FOR JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury in this action of all issues so triable.

*[signature]*

Respectfully submitted,

First Assembly of God of Alexandria, VA

By Counsel,
H. Robert Showers (VA State Bar # 34799)
Timothy P. Bosson (VA State Bar # 72746)
Simms Showers, LLP
305 Harrison Street SE, Third Floor
Leesburg, VA 20175
(703) 771-4671
(703) 771-4681 –facsimile–