UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

FIRST ASSEMBLY OF GOD OF          )
ALEXANDRIA, INC.,                 )
                                  )
          Plaintiff,              )
                                  )
     v.                           )    Case No. 1:08-cv-01053 (CMH/IDD)
                                  )
CATHEDRAL DESIGN &                )
CONSTRUCTION, INC.,               )
                                  )
          Defendant.              )

## REPORT AND RECOMMENDATION

This matter is before the Court pursuant to an Order from the Honorable Claude M.

Hilton (Dkt. no. 5) and plaintiff's First Motion for Default Judgment as to Cathedral Design &

Construction, Inc. ("CDC") (Dkt. no. 10). After a representative of defendant CDC failed to

appear at the February 20, 2009 *ex parte* damages hearing, the undersigned magistrate judge took

this matter under advisement. Upon consideration of the complaint, plaintiff's motion for default

judgment, and the supporting affidavits, the undersigned magistrate judge makes findings as

follows, and recommends that default judgment be entered against defendant.

## I. INTRODUCTION

Plaintiff First Assembly of God of Alexandria, Inc. ("Church") filed suit against CDC on

October 7, 2008. The Church, with its principal office in Alexandria, Virginia, is an incorporated

Virginia church in good standing with the Commonwealth of Virginia. (Compl. ¶ 4.) CDC is a

Colorado corporation registered with the Virginia State Corporation Commission, with its

principal office located in College Park, Maryland. (Compl. ¶ 5.)

Plaintiff alleges that because the Church was outgrowing the size of its current property,

it began the process of actively looking for a new church location in the summer of 2007. While the Church was unable to find any single property that was large enough to provide for its needs, it was able to locate several adjoining properties, which it could assemble into one parcel ("the assemblage") that would suffice.

Plaintiff's complaint alleges one count of breach of contract arising from a contractual agreement between the Church and CDC, pursuant to which CDC was to provide land development due diligence for the Church's purchase of the assemblage of land. The complaint further alleges that CDC breached its contract with the Church by not providing the contracted for services, and, as a direct result of CDC's breach, the Church has incurred significant monetary damages. The Church seeks a judgement awarding compensatory damages in addition to fees and interest associated with the breach in the amount of $175,000.00.[1] (Compl. ¶ 7.)

## A.  Jurisdiction and Venue

The Court has subject matter jurisdiction over this case because the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and the dispute is between citizens of different states. (28 U.S.C. § 1332(a)(1) (2008); Compl. ¶ 1.) Plaintiff's complaint states that personal jurisdiction is proper pursuant to the 5th and 14th Amendments of the United States Constitution and Rule 4(h) of the Federal Rules of Civil Procedure. While not stated in the complaint, however, this Court has personal jurisdiction over defendant CDC pursuant to Virginia's long-arm statute. Specifically, defendant is subject to jurisdiction in Virginia under Va. Code Ann. § 8.01-328-1(A)(2) in that, by entering into a

---

[1]Plaintiff's Supplement to its First Motion for Default Judgment (Dkt. no. 11) seeks a total of $165,109.94 in damages.

contract with plaintiff to provide land development due diligence, defendant "[c]ontracted to supply services or things in this Commonwealth." Venue in this District is based on 28 U.S.C. § 1391 in that plaintiff's claims arose in this District.

### B.  Process and Service

Federal Rule of Civil Procedure 4(e)(1) permits service of the summons and complaint "pursuant to the law of the state in which the district court is located . . . ." Defendant seeks to establish service on defendant CDC, a foreign corporation, pursuant to Va. Code Ann. § 8.01-296 (2008), which provides that in actions where no particular mode of service is prescribed, process may be served upon natural persons as follows: (1) by delivering a copy in writing to the party in person; or (2) if the party to be served cannot be found at his usual place of abode, then service may be effected by substituted service by delivering a copy of the summons and complaint to a family member over the age of sixteen at the party's usual place of abode, or by posting a copy of the process to the main entrance of the party's abode and mailing a copy to the person's address not less than ten days before default judgment is entered.

Plaintiff's process server attempted to personally serve Howard Kelly, registered agent of CDC, at his residence, which is the address listed for CDC's registered agent by the Virginia State Corporation Commission. (Bosson Aff. ¶ 3.) After "waiting for a reasonable time" at Howard Kelly's residence, the process server posted the summons and complaint on the front door of 9212 Arabian Ave., Vienna, Virginia 22182. (Lynn Aff. ¶¶ 2-3.) Further, pursuant to § 8.01-296(2)(b), 10 days before judgment by default was entered, plaintiff's attorney, Timothy P. Bosson, personally mailed by certified letter, return-receipt requested, a copy of the summons and complaint to the address listed by the Virginia State Corporation Commission for CDC's

3

registered agent, Howard Kelley, and to Carl Kent, a principal officer, at CDC's principal office address in the State of Maryland. (Bosson Aff. ¶ 3.)

Plaintiff's attorney further alleges that, in addition to the service that was effected, CDC has received actual notice of plaintiff's complaint because the parties have been in extensive settlement negotiations, and defendant's agent acknowledged that plaintiff would seek this Default Judgment once settlement negotiations ceased. (Bosson Aff. ¶ 4.) Furthermore, during the *ex parte* damages hearing on February 20, 2009, plaintiff's attorney, Mr. Bosson, represented to the Court that the defendant was in actual possession of the complaint since the parties have had "protracted discussions about the complaint." (FTR Log, February 20, 2009)

Before a default or a default judgment may be entered against a defendant, it is an absolute requirement that service of process be properly effected under the Federal Rules of Civil Procedure. *Maryland State Firemen's Ass'n v. Chaves*, 166 F.R.D. 353, 354 (D. Md. 1996). A defendant to a civil action must be served as provided by federal law, by personal delivery or delivery to one's home, or as prescribed by state law. FED. R. CIV. P. 4(e). Thus, in issuing this Report and Recommendation, the undersigned magistrate judge must evaluate whether plaintiff's service upon CDC, pursuant to § 8.01-296, was valid.

For a foreign corporation, § 8.01-31 requires personal service upon: "(1) any officer, director, or on the registered agent of a foreign corporation which is authorized to do business in the Commonwealth; (2) by substituted service in accordance with §§ 13.1-766 or 13.1-928; (3) by substituted service in accordance with § 8.01-329; or (4) by notice of publication if certain prerequisites are met." Va. Code Ann. § 8.01-31 (2008). According to plaintiff's affidavits, plaintiff used the method prescribed for service of process on an individual rather than the

4

methods prescribed in § 8.01-31 for service upon a foreign corporation. Plaintiff's process server did not personally serve CDC's registered agent or use any of the methods prescribed in § 8.01-31. Rather, plaintiff's process server posted the summons and complaint on the door of CDC's registered agent who was authorized to receive process in Virginia. Further, plaintiff's attorney personally mailed, by certified letter, return-receipt requested, a copy of the summons and complaint to the address listed by the Virginia State Corporation Commission for CDC's registered agent, and to Carl Kent, a principal officer, at CDC's principal office address. Unlike § 8.01-296, nowhere in § 8.01-31 does the statute for service upon a foreign corporation prescribe posting of the summons and complaint on the door of the registered agent. Clearly, plaintiff has not properly served the defendant as required by Virginia law.

Under Federal law, the plaintiff's duty to fulfill the requirements of Rule 4 of the Federal Rules of Civil Procedure is not alleviated simply because the defendant has actually received the complaint. *See Chaves*, 166 F.R.D. at 354. Under Virginia law, however, if the defendant actually receives service, though it was not served as required by law, the service is deemed sufficient. *Broadnax v. Dep't of Veteran Affairs Wash. Mut. Bank*, 2005 U.S. Dist. LEXIS 9549, at *14-15 (E.D. Va. May 19, 2005) (citing Va. Code Ann. § 8.01-288 (2008)). The savings provision of the Virginia statute states that, with the exception of actions commencing divorce or annulment or other actions where service is specifically prescribed by statute, "process which has reached the person to whom it is directed within the time prescribed by law, if any, shall be sufficient although not served or accepted . . . ." Va. Code Ann. § 8.01-288. To clarify the language of § 8.01-288, the Revisers' Note to § 8.01-288 states that this section applies to every type of defendant, *e.g.*, a corporation, not just to an individual, who is a defendant.

5

When assessing whether service has been effective, it is appropriate for a court to consider the fact that defendant has demonstrated awareness of a suit. *See Aviance v. Corriea*, 705 F. Supp. 666, 685 (D.D.C. 1989). Plaintiff's process server posted a copy of the summons and complaint on the front door of the registered agent's residence on October 7, 2008 and plaintiff's attorney mailed, via certified mail, return-receipt requested, a copy of the summons and complaint to the registered agent's address as listed by the Virginia State Corporation Commission and to the principal officer at CDC's principal office address on November 11, 2008. Moreover, the affidavits submitted and statements of plaintiff's attorney show that: (1) CDC has received actual notice and receipt of the complaint through defendant's participation in settlement negotiations; (2) based on the statement made by plaintiff's attorney during the February 20, 2009 motion hearing, CDC has made direct reference to the complaint during settlement negotiations; and (3) once settlement negotiations reached an impasse, the Church warned CDC that a request for default judgment would be made. The record clearly shows that the methods used by the Church have, in fact, made CDC aware of this suit, and CDC has failed to appear or respond to the complaint.

Moreover, service must have occurred in a timely manner. Federal Rule of Civil Procedure 4(m) provides an initial period of 120 days to accomplish service. The Complaint was filed on October 7, 2008. A copy of the summons and complaint were posted on the front door of the registered agent's address on October 7, 2008. (Dkt. no. 4.) Furthermore, on November 11, 2008, plaintiffs attorney personally mailed a copy of the summons and complaint to both the registered agent, Howard Kelley, and Carl Kent, a principal officer at CDC's principal office address. (Bosson Aff.¶ 3.) Therefore, CDC was served within 120 days of the filing of the

6

Complaint.

As noted above, § 8.01-288 applies to CDC. Since CDC has received an actual copy of the complaint, and CDC has been made aware of this lawsuit in a timely manner, Virginia's savings provision cures the invalid method used to serve process on CDC. Therefore, service of process was properly effectuated upon CDC.

Service, however, must also satisfy constitutional due process. The Supreme Court held in *Mullane v. Central Hanover Bank & Trust Co.*, 399 U.S. 306, 314 (1950) that constitutional due process requires that service of process be "reasonably calculated, under the circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." If, "with due regard for the practicalities and peculiarities of the case these conditions are met, the constitutional requirements [of due process] are satisfied." *Id.* The constitutional standard is intended to be flexible. *See Schroeder v. City of New York*, 371 U.S. 208, 212 (1962). Posting service on the front door of the residence of the registered agent as well as a certified direct mailing to both the registered agent and a principal officer at CDC's principal office address meets the constitutional requirement of service "reasonably calculated" to give notice. The undersigned magistrate judge finds that the service methods used in this case have been reasonably calculated to apprise defendant of this lawsuit.

### C. Grounds for Entry of Default

On February 12, 2009, plaintiff filed a Request for Entry of Default with the Clerk. (Dkt. no. 8.) The Clerk entered Default on February 13, 2009. (Dkt. no. 9.) On February 13, 2009, plaintiff filed its First Motion for Default Judgment and an affidavit showing plaintiff's damages in support thereof. (Dkt. no. 10). Due to a minor error in the plaintiff's damages affidavit, on

7

February 19, 2009, plaintiff filed a supplement to the First Motion for Default Judgement, which included a corrected affidavit and a corrected damages spreadsheet. (Dkt. no 11.)  To date, Defendant has failed to respond as required by Federal Rule of Civil Procedure 12 or enter an appearance in this matter.  When a representative of CDC failed to attend the February 20, 2009 hearing on plaintiff's Motion for Default Judgment, the undersigned magistrate judge took the Motion under advisement to issue this Report and Recommendation.

## II.  FINDINGS OF FACT

Upon a full review of the complaint, all relevant pleadings, plaintiff's Motion for Default Judgment, and the documents submitted in proof of damages, the undersigned magistrate judge finds that the plaintiff has established the following facts.

The Church is an incorporated Virginia church in good standing with the Commonwealth, and its principal office is in Alexandria, Virginia. (Compl. ¶ 4.)  CDC is a Colorado corporation registered with the Virginia State Corporation as a foreign corporation in good standing.  Its principal office is in College Park, Maryland.  (Compl. ¶ 5.)  In the summer of 2007, the Church began looking for a new church location that would suit its needs as a growing organization. (Compl. ¶ 6.)  While the Church was unable to find a single property that met its needs, with the aid of a broker, the Church did locate several adjoining properties which constitute the assemblage at issue. (Compl. ¶ 6.)  The assemblage properties consisted of 11 lots, numbered 1-11, located in Alexandria, Virginia. (Compl. ¶ 7.)  Though the Church sought to acquire all of the lots, the primary lots necessary for any deal were lots 1, 2, 3, 8, 9, 10, and 11. (Compl. ¶ 8.)

The Church entered into a Preliminary Design-Build Agreement ("Site Feasibility Study") with CDC, a design-build company, requiring that CDC complete a Site Feasibility Study for

Lots 1 and 2. (Compl. ¶ 11.)  The contract required CDC to prepare a report detailing the current

zoning and analyzing the allowable uses of this property to ensure that the proposed use

complied with Fairfax and Alexandria Zoning Ordinances. (Compl. ¶ 11.)  Furthermore, this

study included seeking input from the Fairfax and Alexandria Zoning Officer about the property.

(Compl. ¶ 11.)  The Church also contracted with CDC in a second Preliminary Design-Build

Agreement ("Environmental Assessment"), which required that CDC perform a Phase 1 –

Environmental Assessment of Lots 1 and 2. (Compl. ¶¶ 10, 12.)  CDC hired Bolton &

Associates, LLC ("Bolton") of LaPlata, Maryland to conduct the Feasibility and Environmental

studies. (Compl. ¶ 13.)

     On November 30, 2007, CDC sent a letter to the Church stating that the Environmental

Site Assessment and Site Feasibility Study for Lots 1 and 2 had been completed. (Compl. ¶ 14.)

The report did not contain any reference to zoning or environmental regulations that would

disallow building on either property. (Compl. ¶ 14.)  CDC stated that Lots 3, 8, 9,10, and 11 were

included in the initial Site Feasibility Study that was done on Lots 1 and 2. (Compl. ¶ 15.)  The

parties also agreed that CDC would complete an Environmental Assessment of Lots 8, 9,10 and

11.[2] (Compl.¶ 15.)  On December 5, 2007, in a letter from Bolton to CDC, Bolton confirmed that

they had finished the Site Feasibility Study analysis for Lots 1, 2, 3, 8, 9, 10, and 11.  (Compl. ¶

16.)  Therein, Bolton then stated its findings, noting that the "Fairfax County Zoning Ordinance

allows the use of a church as a special exception." (Compl. ¶ 16; Compl. Ex. D.)  Bolton,

---

    [2] The complaint does not include Lot 3 in the Environmental Assessment; however, the
letter from Bolton states that it "completed the Feasibilty, Preliminary Land Feasibilty analysis
for the Telegraph Road Land Assemblage, on two parcels of land identified in Fairfax County tax
records as Parcels A & B, including lots 1, 2, 3, 8, 9, 10, 11." (Compl., Ex. 3.)

however, made no mention of the presence of any limiting zoning or environmental regulations. (Compl. ¶ 16.)

Relying on the reports produced by CDC, the Church began its efforts to enter into contracts with the owners of lots 1-3 and 8-11 – the primary lots necessary for the deal. (Compl. ¶ 8, 17.) The Church was able to secure contingent contracts with a 90-day refundable down payment for all of the lots, except Lots 1 and 2. (Compl. ¶ 17.) Because of matters particular to lots 1 and 2, and to receive a much reduced purchase price, the Church was forced to agree, in a contract dated March 28, 2008, to a $100,000.00 non-refundable deposit on the property. (Compl. ¶ 17.)

On or about April 21, 2008, the Church and CDC met with the appropriate county parties in the Fairfax County Land Use office. At that time, it was first pointed out by the Fairfax County Zoning officer that the Church would not be able to build anything on the property because all of the assemblage land was encumbered by "Resource Protection Areas" ("RPA") under the Chesapeake Bay Preservation Act ("CBPA") and much of it was in a flood plain. (Compl. ¶ 18.) Upon discovering this information and after many inquiries by the Church as to whether these problems could be overcome, which proved unsuccessful, the Church requested that CDC reimburse the Church for amounts it had expended on CDC's services, including its cost in pursuing development of the useless site and any other outlays related to securing the defunct lots. (Compl. ¶ 19.) To this date, CDC has refused to reimburse the Church for its losses resulting from the breach. (Compl. ¶ 19.)

CDC had a contractual obligation to review the proper records and laws and/or regulations and discover the obvious environmental encumbrance on the assemblage of land. By

10

failing to discover and report to the Church the zoning and environmental problems with the property, CDC failed to fulfill its contractual obligations and, thus, CDC breached both agreements with the plaintiff.

### A.  Money Damages

Plaintiff's complaint states that defendant is liable in an amount equal to $175,000.00. However, prior to the damages hearing, plaintiffs supplemented their First Motion for Default Judgment with a corrected damages spreadsheet. (Compl.¶ 7.)  The corrected damages amount reflected the removal of a $5,600.00 fee associated with an Environmental Site Assessment and Study of Lots 8, 9, 10, and 11.  (Pl.'s First Mot. Default J., Damages Aff. at 3; Supplement to Pl.'s First Mot. Default J., Supplement Corrected Damages Spreadsheet.)  Currently, plaintiff seeks damages in the amount of $165,109.94.

Defendant had a contractual obligation to conduct a proper zoning analysis and the Church paid various retainers and fees for this analysis.[3]  In conducting said zoning analysis, CDC should have discovered, almost immediately, that Lots 1 and 2 were not buildable due to the CBPA, which is contained in the Fairfax County Zoning Ordinance at § 32-03-118. Additionally, the Environmental Assessment of Lots 1 and 2 should have led CDC to discover the existence of the RPAs because CDC agreed to review records for the purpose of identifying any recognized environmental conditions in connection with the property and to provide a preliminary evaluation of the assemblage, including information regarding applicable governmental laws, regulations and requirements.  By failing to discover and report to the

_____

[3] A description of these land expense fees is attached as a Supplement Corrected Damages Spreadsheet to plaintiff's Supplement to the First Motion for Default Judgment. (Dkt. no. 11.)

11

Church the zoning and environmental problems with the property, CDC breached both agreements. Plaintiff requests an award of $30,200.00 for the money paid pursuant to the contract with defendant. (Camp Aff. ¶ 4.a.)

CDC's failure to discover and report the zoning and environmental problems with the property led to more losses for the Church as it prepared to build upon the unbuildable land. Had the Church known that Lots 1 and 2, the fundamental lots to the arrangement, were not buildable upon, the Church would not have pursued purchase of the other properties, loans for land development costs, and planning of the structures to be placed on those properties.[4] Therefore, all work and costs occurring after CDC's initial error in not immediately discovering the RPAs on Lots 1 and 2 are direct consequential damages of CDC's breach. Furthermore, CDC represented to the Church that all of the aforementioned lots could be built upon. CDC also represented that the other uses to which the Church wanted to put the properties would comply with all zoning and environmental requirements of Fairfax County. Once it was discovered that all of the lots were restricted by RPAs, it became evident that the Church could not build the planned structures for which CDC had initial architectural plans drawn. Plaintiff requests an additional award of $103,136.30 in non-refundable acquisition fees to purchase the land related to the assemblage, and $5,899.01 for the interest on the $50,000.00 the church borrowed to finance the land development costs. (Camp Aff. ¶ 4.c-d.)

Furthermore, the Church incurred legal fees in the amount of $25,874.63 from September 2007, when it contracted with CDC, through June 2008, when it realized it was impossible to

---

[4] A description of these bank and land purchase expenses is attached as a Supplement Corrected Damages Spreadsheet to plaintiff's Supplement to the First Motion for Default Judgment. (Dkt. no. 11.)

build the desired building on the land. (Camp Aff. ¶ 4.b.) These attorney's fees included

amounts for negotiating contracts with all the property owners in the land assemblage deal,

negotiating contracts with contractors, and the initial stages of land-use site development.[5]

## III.  EVALUATION OF PLAINTIFF'S COMPLAINT

Where a defendant has defaulted, the facts set forth in the plaintiff's complaint are

deemed admitted. Before entering default judgment, however, the Court must ensure that the

complaint properly states a claim. *GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d

610, 612 n.3 (E.D. Va. 2003).  Thus, in issuing this Report and Recommendation, the

undersigned magistrate judge must evaluate the plaintiff's claims against the standards of FED. R.

CIV. P. 12(b)(6).

This Court has jurisdiction solely on the basis of diversity of citizenship jurisdiction, and

the substantive law of Virginia therefore applies. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64,

78, 58 S. Ct. 817, 82 L. Ed. 1188 (1938).  It is settled under Virginia law that the elements of a

breach of contract action are: (1) a legally enforceable obligation of a defendant to a plaintiff; (2)

the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff

caused by the breach of obligation. *Filak, et al. v. George*, 267 Va. 612, 619, 594 S.E. 2d 610

(2004) (citing *Brown v. Harms*, 251 Va. 301, 306, 467 S.E. 2d 805, 807  (1996); *Fried v. Smith*,

244 Va. 355, 358, 421 S.E. 2d 437, 439, 9 Va. Law Rep. 298 (1992); *Westminster Investing

Corp. v. Lamps Unlimited, Inc.*, 237 Va. 543, 546, 379 S.E. 2d 316, 317, 5 Va. Law Rep. 2268

(1989)).

---

[5] A description of these legal services fees is attached as a Supplement Corrected
Damages Spreadsheet to plaintiff's Supplement to the First Motion for Default Judgment. (Dkt.
no. 11.)

Plaintiff's complaint alleges one count of breach of contract arising from a contractual agreement between the Church and CDC, pursuant to which CDC was to provide land development due diligence for the Church's purchase of the assemblage of land. The complaint further alleges that CDC breached its contract with the Church by not providing the contracted for services, which affected the outcome of the due diligence report. Defendants had a legally enforceable obligation to properly perform research on the assemblage, and failed to do so. As a result of the numerous breaches of the parties' agreements, the Church was damaged in expending money on deposits, planning, architectural, environmental, legal, and engineering costs to begin the approval process for the building and grading, and further site work on the properties. The Church's damages were directly caused by CDC's breach and were foreseeable at the time of execution of their contracts. Therefore, plaintiff's complaint has stated a claim upon which relief can be granted. The undersigned magistrate judge finds that plaintiff has provided an appropriate basis for judgment through the well-pled complaint and the affidavits in support of default judgment.

## IV.  RECOMMENDATION

The undersigned magistrate judge recommends that the Court grant the plaintiff's First Motion for Default Judgment (Dkt. no 10). The magistrate judge further recommends the entry of judgment in the amount of $165,109.94 plus post-judgment interest accruing at the judgment rate of interest of six percent (6%) in favor of plaintiff against defendant.[6] Specifically, the undersigned recommends an award of $30,200.00 for the fees plaintiff paid to the defendant

---

[6] In plaintiff's prayer for relief in its Complaint, plaintiff seeks pre- and post-judgment interest. However, plaintiff's First Motion for Default Judgment only seeks post-judgment interest.

14

.

pursuant to their contract, $25,874.63 for attorney's fees, $103,136.30 in non-refundable acquisition fees to purchase the land related to the assemblage, and $5,899.01 for the interest on the loan CDC used to finance the land development costs.

## V. NOTICE

**By mailing copies of this report and recommendation, the parties are notified as follows. Objections to this report and recommendation must, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, be filed within ten (10) days of service on you of this report and recommendation. A failure to file timely objections to this report and recommendation waives appellate review of the substance of the report and recommendation and waives appellate review of a judgment based on this report and recommendation.**

The Clerk is directed to send a copy of this Report and Recommendation to all counsel of record and defendant at the following addresses:

Mr.  Howard Kelly
Registered Agent
Cathedral Design & Construction, Inc.
9212 Arabian Ave.
Vienna, Virginia 22182

Mr. Carl Kent
Principal Officer
Cathedral Design & Construction, Inc.
5125 Berwyn Rd.
College Park, Maryland 20740

/s/

Ivan D. Davis
United States Magistrate Judge

March 20, 2009.
Alexandria, Virginia